**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sallianne Marie English, | No. CV-23-02490-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Sallianne Marie English ("Plaintiff") seeks judicial review of a decision by the Social Security Administration ("SSA") Commissioner (the "Commissioner" denying her application for Supplemental Security Disability Insurance ("SSDI") benefits under the Social Security Act, 42 U.S.C. § 401 et seq. (the "Act"). (Doc. 1). Plaintiff filed her Opening Brief (Doc. 20), the Commissioner filed a Response (Doc. 21), and Plaintiff filed a Reply (Doc. 22). A review of the briefs and the Administrative Record (Doc. 13, "AR"), warrants this Court's reversal of the Administrative Law Judge's ("ALJ") March 20, 2023, decision (AR at 18–28) because the ALJ did not articulate how or why the other assessments contradicted Nurse Radcliff's[1] assessment. Further, the ALJ did not provide specific, clear, and convincing reasons for rejecting Plaintiff's symptom testimony.

/ / /

---

[1] The Commissioner correctly refers to RN Amanda Radcliffe but the ALJ refers to her as "Radcu." (AR at 25). Remarkably, the Commissioner asserts the ALJ rejected her opinion because it came in a "check box" form, (Doc. 21 at 2), even though the ALJ's opinion does not assert this as a reason for rejecting her opinion. And this Court's own review of the AR includes substantial treatment notes from RN Radcliffe, not merely a "check-box" form.

**I.  Background**

On April 7, 2021, Plaintiff filed an application for SSI benefits under Title II of the Act, alleging a disability onset date of October 1, 2019.[2] (*Id.* at 18). Plaintiff was twenty years old at the time of her alleged onset date and has a tenth-grade education. (*Id.* at 26). She has no past relevant work experience. (*Id.*) She also has a history of depression, anxiety, and suicidal and homicidal ideation. (Doc. 20 at 2). Plaintiff claims she is unable to work because she has severe anxiety that renders her unable to speak or leave her home. (*Id.* at 9–10). Her symptoms are often accompanied by a lack of concentration and auditory hallucinations. (*Id.*)

Plaintiff's claims were initially denied on October 6, 2021, and upon reconsideration on July 14, 2022. (AR at 18). After holding a hearing on February 9, 2023, the Administrative Law Judge ("ALJ") again issued an unfavorable decision on March 20, 2023. (*Id.* at 18–28) (the "March Decision").

**II.  The ALJ's Five Step Process**

To be eligible for Social Security benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The ALJ follows a five-step process[3] to determine whether a claimant is disabled under the Act:

> The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in "substantial gainful activity" and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)–(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or

---

[2] Although the ALJ's decision cites Plaintiff's alleged date of disability as April 6, 2021, the Court finds that it is properly October 1, 2019. Plaintiff's counsel moved to have the date amended during the hearing and the ALJ did not rule on the matter, but it is consistent with when Plaintiff first became insured for Disability Insurance Benefits and with internal agency review. (AR at 38; AR at 256, Exhibit 8: Disability Report, Field Office).

[3] The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

>combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id.* If the process continues beyond the third step, the fourth and fifth steps consider the claimant's "residual functional capacity"[4] in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id.* § 416.920(a)(4)(iv)–(v).

*Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013); *see also* 20 C.F.R. § 404.1520(a)–(g). If the ALJ determines no such work is available, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v).

The ALJ's findings in the March Decision are as follows:

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 6, 2021.[5] (AR at 20). At step two, he found Plaintiff has the following severe impairments: depression, anxiety, bipolar disorder, borderline personality disorder, and posttraumatic stress disorder. (*Id.* at 21 citing 20 C.F.R. § 404.1520(c)). At step three, he determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. (*Id.* at 21).

At step four, the ALJ found Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations: "she is limited to simple work requiring no more than occasional social interaction." (*Id.* at 23). The ALJ determined Plaintiff has no past relevant work experience, but given her age, education, work experience, and RFC, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* at 26). Plaintiff was therefore deemed not disabled under the Act. (*Id.* at 27).

The SSA Appeals Council denied Plaintiff's request for review of the March

---

[4] A claimant's residual functional capacity is defined as their maximum ability to do physical and mental work activities on a sustained basis despite limitations from their impairments. *See* 20 C.F.R. §§ 404.1545(a), 404.1520(e), 416.920(e).

[5] *See supra* footnote 1.

decision, thus adopting the Decision as the agency's final decision. (*Id.* at 1–6). This appeal followed. On November 30, 2023, Plaintiff filed a Complaint under 42 U.S.C. §§ 405(g), requesting judicial review and reversal of the Commissioner's decision. (Doc. 1).

**III.   Standard of Review**

In determining whether to reverse a decision by an ALJ, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). "An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)); 42 U.S.C. §§ 405(g), 1383(c)(3)). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Garrison*, 759 F.3d at 1009 (9th Cir. 2014) (internal citation omitted). To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must "set forth the reasoning behind its decisions in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). This is because district courts may only review those reasons the ALJ places on the record and cannot speculate what the ALJ's reasoning might have been based on other evidence available. *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require [the court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion

must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

"Harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.* Typically, the claimant bears the burden of showing that an error is harmful. *Id.* at 1111 (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

**IV.  Discussion**

Plaintiff contends the ALJ erred for two reasons: (1) the ALJ improperly rejected the assessment of treating mental health nurse practitioner Amanda Radcliffe, PMHNP ("Nurse Radcliffe"); (2) the ALJ improperly discounted Plaintiff's symptom testimony. The Court will address each argument in turn.

**A.   Medical Opinion**

First, Plaintiff challenges the ALJ's decision to reject Nurse Radcliffe's August 4, 2022, assessment. (Doc. 20 at 8). She maintains the ALJ did not adequately articulate how he considered the supportability and consistency factors when discounting Radcliffe's opinion. (*Id.* at 17). She also alleges that he failed to look at the underlying treatment notes and put too much emphasis on "normal findings on mental status examinations at time-limited appointments." (*Id.* at 14–15). The Commissioner responds by arguing that the ALJ properly cited to other objective evidence and Plaintiff's daily activities when rejecting Nurse Radcliffe's opinion. (Doc. 21 at 2–5). The Court disagrees.

**1.   Legal Standard**

Because Plaintiff applied for disability benefits after March 27, 2017, she is subject to the new regulations for evaluating evidence from medical providers. *See* 20 C.F.R. § 416.920c. The new regulations eliminate the previous hierarchy of medical opinions, and the ALJ is not allowed to defer to or give specific weight to any medical opinions:

We will not defer or give any specific evidentiary weight, including

>controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

*Id.* § 416.920c(a).[6] The regulations require an ALJ to articulate how persuasive they find all the medical opinions and prior administrative medical findings and set forth specific "articulation requirements" for the ALJ's evaluation of the medical opinion evidence. *Id*. §§ 404.1520c(b), 416.920(b).

The Ninth Circuit confirmed that the recent changes to the SSA regulations displaced the former hierarchy of medical opinions. *Woods*, 32 F.4th at 787. The longstanding rule that assigned "presumptive weight based on the extent of the doctor's relationship with the claimant [] no longer applies." *Id*. An ALJ no longer needs to articulate "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion. *Id*. at 792. "Now, an ALJ's decision . . . to discredit *any* medical opinion, must simply be supported by substantial evidence." *Id*. at 787 (emphasis added).

However, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all the medical opinions from each doctor or other source and explain how it considered the supportability *and* consistency factors in reaching these findings." *Id.* at 792 (emphasis added). Supportability refers to "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence." *Id*. at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). Consistency refers to "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in

---

[6] Other factors that may, but need not, be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, frequency of examinations, purpose and extent of the treatment relationship, and the specialization of the provider. 20 C.F.R. § 416.920c.

the claim." *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).

### 2. Nurse Radcliffe's August 4, 2022 Assessment

The issue is whether the ALJ's explanation to reject Nurse Radcliffe's medical opinion was supported by substantial evidence. In her August assessment (AR at 1240), Nurse Radcliffe determined that Plaintiff had impairments that precluded an eight-hour workday. (*Id.*) She also assessed Plaintiff's ability to interact with others and accept supervision and perform simple tasks. (*Id.*) Nurse Radcliffe also indicated that although Plaintiff's symptoms varied in severity, her assessment was based on objective and documented findings. (*Id.* at 1241) She also noted that Plaintiff's psychiatric symptoms affected the pace of her work and were expected to last longer than 12 months. (*Id.*)

The ALJ found Nurse Radcliffe's findings unpersuasive because they were in "check-box form," and went against assessments by other medical professionals that he found more persuasive. (AR at 25–26). To support his conclusion, he relied on (1) the other assessments; and (2) Plaintiff's daily activities that he believed were not in accord with Nurse Radcliffe's assessment. (*Id.*) The Court will examine each reason in turn.

#### a. Comparison to Other Assessments

The ALJ first explained that the problem he found with Nurse Radcliffe's assessment was, "There is no provided explanation for inconsistent evidence to the degree of limitations proposed, such as exam results, the claimant's reported activities, or opinions and assessments provided by other medical sources as discussed in this decision." (*Id.*) He did not point out which exam results he refers to. He then went on to say that he found the assessments of Dr. Ralph Mertens, Ph.D., and Dr. Raymond Novak, M.D., more persuasive because they supplemented their assessment with treatment notes and exam results. (*Id.)* He again did not point out which treatment notes or exam results they relied on, and in turn he relied on to come to this conclusion. In doing so, he neglected to articulate how he considered the supportability or consistency factors when reaching his findings. The Commissioner also takes issue with Nurse Radcliffe's use of a check list form to assess Plaintiff's condition. (Doc. 21 at 3).

First, the ALJ did not articulate why the other assessments belied Nurse Radcliffe's findings. And it is apparent that Nurse Radcliffe's findings, as is stated in her assessment, were based on objective and documented evidence. (AR at 1241). She had, after all, treated the Plaintiff multiple times before that assessment. *See* (AR at 828, 833, 995, 997, 1019, 1022, 1574, 1577, 1580, 1583, 1586) (showing an extensive treatment record of Plaintiff by Nurse Radcliffe). The ALJ did not engage in any portion of the AR that showed Nurse Radcliffe's past treatment history of Plaintiff and instead relied exclusively on one assessment to discount her entire opinion. *See Orn*, 495 F.3d at 634 (emphasizing that the supportability of a physician's opinion should be viewed within the context of the entire record). As to the Commissioner's disagreement with the "check box" format of Nurse Radcliffe's assessment, the Court finds that is not a proper reason to discount a medical provider's opinion. *See Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017) (stating that an ALJ is "not entitled to reject the responses of a treating physician without specific and legitimate reasons for doing so, even where those response were provided on a "check-the-box" form, were not accompanied by comments, and did not indicate to the ALJ the basis for the answers.") Thus, the ALJ's citations to assessments by other medical sources do not serve as a sufficient basis for rejecting Nurse Radcliffe's opinion of Plaintiff's diagnosis.

### b.     Daily Activities

The ALJ next cited to Plaintiff's daily activities, noting Plaintiff "reported she maintained the ability to perform activities of daily living independently, activities that include caring for pets, performing personal care, managing medications (with occasional reminders), preparing simple meals, performing household chores, going out alone, using public transportation, shopping in stores, managing personal finances, and enjoying hobbies and interests, which include watching television and movies, and singing (however with limited frequency)." (AR at 24–25). A plaintiff's ability to carry out "daily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are

transferable to a work setting." *Orn*, 495 F.3d at 639 (internal quotations and citations omitted). Here, the ALJ made no such indication. Therefore, the Court does not find that these activities serve as clear and convincing reasons to reject Nurse Radcliffe's assessment. *See Vertigan v. Halter*, 260 F.3d 1044, 1049–50 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability [o]ne does not need to be utterly incapacitated in order to be disabled.").

### B. Symptom Testimony

Second, Plaintiff claims the ALJ failed to give specific, clear, and convincing reasons for rejecting her symptom testimony. (Doc. 20 at 18–23). The Court agrees.

#### 1. Legal Standard

An ALJ must perform a two-step analysis when determining whether a claimant's testimony regarding subjective pain or symptoms is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-1036 (9th Cir. 2007). First, the ALJ must determine whether Plaintiff presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged. *Garrison*, 759 F.3d at 1014. "In this analysis, the claimant is not required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" *Id*. (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Second, if there is no evidence of malingering, the ALJ may reject the Plaintiff's symptom testimony only by giving specific, clear, and convincing reasons. *Id*. at 1015; *Brown-Hunter*, 806 F.3d at 488–89. "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

To determine whether a claimant's testimony regarding the severity of her symptoms is credible, an ALJ may consider the following:

(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid;

(2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and

(3) the claimant's daily activities.

*Smolen*, 80 F.3d at 1284. An ALJ may also consider the claimant's work record, and the observations of treating and examining physicians and other third parties regarding "the nature, onset, duration and frequency of claimant's symptoms, and precipitating and aggravating factors, functional restrictions caused by the symptoms, and the claimant's daily activities." *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).

### 2. The ALJ Summary of Plaintiff's Symptom Testimony

At the outset, the Court notes that the ALJ, in one paragraph, dismissed the intensity, severity, and persistence of Plaintiff's symptoms, with no underlying basis for doing so. (AR at 24). As a last-ditch attempt to provide some rationale, the ALJ cited to Plaintiff's daily activities as the given reason for dismissing her testimony. (*Id.* at 25). Struggling to provide further support, the ALJ then pointed to a host of exams and treatment records, that, if they showed anything at all, showed that Plaintiff was not suffering with hallucinations or a foul mood at every moment of her life. (*Id.*) Thus, it appears the ALJ's evaluation "[f]ailed to connect anything specific in the medical record to a specific inconsistency with any particular portion of English's symptom testimony." (Doc. 20 at 19).

Upon review of the record, Plaintiff gave symptom testimony in greater detail at the February 9, 2023, oral hearing. (AR at 35). She indicated *inter alia* that she experienced anxiety every day, to the point where she could not hold down a job. (*Id.* at 43). The onset of symptoms like racing thoughts, a fast-paced heartbeat, sweating, and clammy hands, made it so that she has trouble forming words and communicating verbally. (*Id.* at 43).

She testified that these symptoms were aggravated when she tried to work, and often resulted in an anxiety attack that required her to rest for two hours afterwards. (*Id.* at 44). Every day, she also struggled with "Crying, irritability, ultimate sadness, cutting, suicidal thoughts, other self-harm thoughts, do things a lot; overeating, undereating, sometimes under-sleeping, like not sleeping too much and also anger." (*Id.* at 45). She admitted to regularly cutting herself and battling suicidal thoughts. (*Id.*) Plaintiff also stated that her medication gave her auditory and visual hallucinations. (*Id.* at 46). Although she said she did not have a valid drivers license, she said that she could leave her home to get groceries and her medications, if she had the mental energy to do so. (*Id.* at 49). Such limitations, which the ALJ did not meaningfully discuss, would preclude sustained work.

### 3. Objective Medical Evidence

The ALJ began his discussion of Plaintiff's symptom testimony with an overview of various objective medical evidence. (AR at 25). He acknowledged that Plaintiff's symptoms "[c]ould reasonably be expected to cause the alleged symptoms." (*Id.* at 24). But then went on to state that other evidence in the record did not support the intensity, severity, and persistence of her symptoms. (*Id.*) Of the medical evidence he pointed to, much of it has to do with Plaintiff's "normal memory, judgment, insight, and concentration." (*Id.*) Other portions of what he cites are references to Plaintiff being cooperative with physicians and having a normal mood. (*Id.*)

The Commissioner argues the ALJ properly considered medical records of Plaintiff appearing to have a normal mood and concentration to discount her testimony. (Doc. 21 at 6–7). Plaintiff opposes, contending the ALJ "[f]ailed to connect anything specific in the medial record to a specific inconsistency with any particular portion of English's symptom testimony." (Doc 20 at 19). The Court agrees with Plaintiff.

Although the ALJ provided an overview of Plaintiff's medical history, "providing a summary of medical evidence . . . is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible." *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (quoting *Brown-Hunter*, 806 F.3d at 494). The ALJ

neglected to "identify what testimony [was] not credible and what evidence undermine[d] the claimant's complaints." *Ghanim*, 763 F.3d at 1163. For example, the ALJ neither explained (a) why smatterings of normal findings did not support Plaintiff's symptom testimony; nor (b) why the normal findings should be given more weight than the abnormal findings to discredit Plaintiff's symptom testimony. *See Curtis v. Comm'r of Soc. Sec. Admin.*, 2018 WL 6418486, at *7 (D. Ariz. Dec. 6, 2018) (citing *Garrison*, 59 F.3d at 1009). The ALJ's discussion of the objective medical evidence, absent any reasons for credibility determinations, is insufficient to reject Plaintiff's testimony under the clear and convincing standard. *See Lambert*, 980 F.3d at 1277–78; *Burrell v. Colvin*, 775 F.3d 1133, 1137–38 (9th Cir. 2014)).

### 4. Daily Activities

The ALJ then moved on to a detailed discussion of Plaintiff's daily activities. (AR at 25). The Court will not recite its reasoning as to why Plaintiff's daily activities do not support dismissing her symptom testimony. *See supra* Section IV. 2(b).

## V. Remand

Once a court has determined an ALJ's decision contains harmful error, it maintains discretion to remand the case for additional proceedings or for an award of benefits. *Reddick v. Chater*, 157 F.3d 715, 728 (9th Cir. 1998) (citing *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989)). Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). This is "the proper course, except in rare circumstances[.]" *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). Conversely, under the "credit-as-true" rule, the court has discretion to remand for an award of benefits where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020 (citations omitted).

Plaintiff argues her case meets the credit-as-true standard because there are no "significant factual conflicts," or "crucial questions as to the extent of [claimant's] impairment" that require resolution before a finding of disability. (Doc. 20 at 25 quoting *Treichler*, 775 F.3d at 1104–05). However, the Court finds it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further analysis of Plaintiff's subjective symptom testimony and evaluation of the medical evidence are necessary before a proper determination of Plaintiff's disability can be made. Therefore, the Court, in its discretion, finds that a remand for further proceedings is appropriate here.

## VI.  Conclusion

The ALJ committed legal error by failing to provide legally sufficient reasons for (1) rejecting Nurse Radcliffe's assessment of Plaintiff's work-related abilities; and (2) discounting Plaintiff's symptom testimony. The Court finds these errors warrant remand for further proceedings.

Accordingly,

**IT IS ORDERED** that Administrative Law Judge's March 20, 2023, decision is reversed and remanded for additional proceedings.

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to enter judgment accordingly and terminate this action.

Dated this 31st day of March, 2025.

Honorable Diane J. Humetewa
United States District Judge